Good morning, Your Honors. May it please the Court. My name is Anna Benvenu, and I represent Petitioner Darshan Singh. I'm appearing today on behalf of Darshan Singh, and the Court's reviewing an adverse credibility finding of the immigration judge. This is in a pre-Real ID Act context, in which the petitioner is alleging that his due process rights were violated when the immigration judge prevented him from presenting additional testimony and potentially documentary evidence. The Court conducts a de novo review in this case, because it's a legal question. And Mr. Singh must only show that the due process violation affected – potentially affected the outcome of his case. And how do you – how do you show prejudice here? I mean, that's obviously the number one question for you. Yes, Your Honor. In this case, the immigration judge rendered an adverse credibility finding without giving Mr. Singh the opportunity to explain or address a number of the inconsistencies and omissions that she identified were the basis for a decision. In this case, on the record, prior to any questions about the persecutor bar, which was one of the reasons for the redirect exam, the immigration judge herself indicated that Mr. Singh would have more opportunity to explain himself. For example, at the administrative record at 162, Mr. Singh said, excuse me, Your Honor, I'd like to answer the question, but I didn't understand what the question was. And the immigration judge said, sir, your attorney will have an opportunity, and you will have an opportunity to clarify this. That indicates that even during his direct exam, he was being shut down from explaining things because – I'm sorry, during his cross-exam, that he was being shut down from explaining because the immigration judge was going to offer his attorney and him the opportunity on redirect to clarify those issues. Well, clearly, you know, it's not a desirable situation for someone to say you're going to have a chance to speak and then you don't get the chance and the decision comes out. But if, you know, I think probably, and I'm not speaking for the panel, but I think probably in terms of the adverse credibility, the one that sort of resonates with me is his fear, his claimed fear of the – fear of persecution by the Indian Army. That seemed – didn't really seem – that just didn't seem to match in light of the fact that he subsequently served honorably in the Army until 1999. And that – so where – what would you present on that issue? What additional reasons for fearing? I don't see anywhere in the record that you're saying what – how you would change anything. Well, Your Honor, I actually think that the immigration judge conflated that a bit. The standard for asylum proving that he had, like, an incident of past persecution that made him scared to return, and then there's a question of whether he has a well-founded fear. And on that point, the question is, is there a – in his case, it was a nongovernmental actor that persecuted him. So he had a burden of showing that he couldn't get protection from a government actor. And so there were two potential places in his case for protection. One was the police and one was the Army. And I think that it's not about his basic fear of persecution. His basic fear of persecution is he's scared of the militants who captured him so that they would give him training on rocket launchers. The Army just couldn't protect him. So that testimony about why the Army wouldn't provide a safe haven for him isn't actually about his fear of persecution, which I think explains why there's not a ton of stuff in his declaration about it. But I guess there's never been anything other than sort of like, well, if you give me a chance, I'll do more. But there isn't – but you haven't really proffered anything to say, if given the opportunity, this is what would have occurred and made a difference. Right, Your Honor. And part of that is because it's not – And so, you know, giving you a hearing, if you can't really prove anything, doesn't – you're not meeting the prejudice prong. Well, all of us are left in this situation where we just have to guess what he would have said if he was giving the opportunity. Well, no, that's not always true because a lot of times we get cases where exactly what people say is the redirect that I was planning, this is what we were going to show and this is how it would have changed things, and we can look at that and make an offer of proof. And he never has – he, you know, he never has come up with anything. Well, Your Honor, in this case, Mr. Singh didn't make an offer of proof attached to the brief because our understanding is that the – this Court's review is limited to the administrative record. And so in this case, Mr. Singh could have explained, for example, that he was detained by the Indian Army and that what happened during his detention was interrogation and poor treatment. And so that's not actually inconsistent with saying he feared interrogation and poor treatment if he had to go back and was detained by the Indian Army. Those things aren't really inconsistent. And in this record, there's a number of things like that where if somebody had just asked him what he meant, what did you mean when you said you went to your friend's house and later you testified you went to your brother-in-law's house? Maybe his brother-in-law was his friend before he was his brother-in-law. Maybe his sister married his friend and now he became his brother-in-law. Maybe a friend lives with his brother-in-law. There's all kinds of total explanations. Sotomayor When a person is on appeal, doesn't she have the burden of both showing error and showing prejudice? And in order to show prejudice in context, doesn't she have to say not, oh, gosh, there are a lot of things I might have said. Doesn't she have to come in and say, look, this is what we would have said if we had had the chance. And if we had had a chance to do this, it might have affected the outcome. You don't have to prove it would have affected the outcome, but you at least have to show how it might have affected the outcome. Sherry And Mr. Singh has done that, Your Honor, just by saying that there's places where he wasn't given an opportunity to explain that presumably everyone expected at that hearing would have happened at the next hearing. And so everybody was just waiting to provide these explanations to the date of that hearing, and then all of a sudden there was just a decision and no explanations. Not only that, but the immigration judge gave him a deadline to submit additional documents and to submit a witness list. Kagan So what, so did you submit those to the BIA and say this is what we would have submitted? Sherry No, Your Honor. His prior counsel didn't submit those to the BIA. Kagan And what? Sherry His former counsel is who represented him at the hearing. Kagan But that's usually how you show prejudice. I mean. Sherry Understood, Your Honor. And at this point I think that. Kagan And even here, I mean, it's not you can say this is what we would have shown, so that's how we were really prejudiced. And so really now it's just saying, well, I had other things I wanted to say. Well, you've had a long time to say it. Sherry Understood, Your Honor. And that said, in the regular Pre-Real ID Act credibility finding, it just doesn't stand up even outside of the due process violation. He was entitled an opportunity to explain every inconsistency under Pre-Real ID Act standards. And so even if you take the due process violation out, he wasn't given an opportunity to explain a number of any of these inconsistencies. And the context in which he would have explained them is the due process violation, but just independent of that argument, he needed an opportunity to explain each inconsistency. And the immigration judge didn't give him that. And even where he did try to explain things, he was shut down from explaining them. And that can't possibly be substantial evidence to support the adverse credibility finding where he wasn't given that opportunity or where inconsistencies were minor and didn't go to the heart of the claim. And in this case, outside of the context, the adverse credibility finding can't do that. Do you want to save any time for rebuttal? Yes, Your Honor. And hear how the government is going to defend that he didn't get a chance to explain? Sounds good. Thank you. All right. Thank you. Good morning. Good morning, Your Honors. My name is Beau Stanton. I'm here today on behalf of the United States Attorney General. This petition for review should be denied because substantial evidence supports the agency's decision that petitioner had testified incredibly and, therefore, could not meet his burden of proof for asylum. Let's just jump straight to the prejudice question. That's obviously a big issue. Sure. Well, let me ask you this. You can't just tell someone you're going to have a chance to explain and then, you know, we can't be supportive of that. Well, Your Honor, if you go back and look at the record in this case, you can see as the merits hearing went on before the immigration judge, the government attorney at that time presented the prosecutorial bar, and redirect was only going to be limited to whether or not petitioner had persecuted people in Sri Lanka with the Indian Army. And you can find this at AR, excuse me, administrative record, at 183. We know that. Yeah. It's this one I clarified just in case. But if you go and look at 183 through 184, this is petitioner's counsel at the time of the merits hearing. It says that we're going to continue this case to a time that the court will give us so that we have a chance to rebuttal of the government. The redirect was going to be solely limited to the question of whether or not the petitioner in this case engaged as a prosecutor, persecuted people in Sri Lanka during his time with the Indian Army. And if you go and look at their appeal brief before the Board of Immigration Appeals, they didn't say we were denied all redirect, therefore, it was a due process violation. We were prejudiced by that. Instead, they limited it to the single issue that they limited the immigration hearing. And if you go to administrative record at page 19, this is by word quote. We're going to reset the case for the respondent could rebut the government's case concerning any aid that the respondent might give to militants. So before the Board of Immigration Appeals, the single issue that was raised was whether or not the petitioner was denied due process because he wasn't allowed redirect examination on the sole issue of whether or not he was. What about the passage in the cross-examination that your opponent referred to where the judge actually said, oh, don't worry, sir, your counsel is going to have an opportunity, obviously, on redirect to allow you to explain that. You're not going to have a chance to explain that now. Well, Your Honor, as I said, if you go back and read the record as a whole and you see how the merits hearing, see how fluid it was, you can see that it was getting laid in a day. And the petitioner's counsel herself limited it, redirect. This wasn't the government limiting it. This wasn't the immigration judge limiting redirect to a single issue. But this was petitioner's counsel's at the merits hearing. And I would also say that this issue that petitioner's counsel is now raising before this Court that is denied redirect to all issues is new. This is not an exhaustive argument, and this Court is therefore barred from hearing this argument. But even without that, based on the record evidence, this is simply not the case, and redirect was limited to a single issue. Let's say we disagree with you in your reading of the record on that point. Just speak to prejudice. Obviously, there's nothing in the record specifically that the petitioner can point to in terms of what he would have said on redirect. But don't we have a line of cases that say, in this context, your petitioner is not required to do that? Yes. And petitioner's counsel did cite to those cases. But that case is distinguishable because in that case, in the cases at least cited by petitioner's counsel, they were just denied any redirect examination. That's something they wanted to preserve. Whereas in this case, redirect was limited to but a single issue. And that has been reinforced not only at the mayor's hearing but before the Board of Immigration Appeals. And even petitioner's counsel in their brief before this Court, and if you go to page 16 of their brief, says that he was given a continuance in order to have additional time to prepare a rebuttal to the issues raised by the government regarding Mr. Singh's activities in Sri Lanka. That's the reason why there was a need for a continuance as opposed to proceeding with redirect right then, as you normally would. But I don't read the record as suggesting that counsel was affirmatively waiving his or her opportunity to come back and do the traditional redirect that one would do in a normal trial situation. Well, Your Honor, there is no evidence in the record that petitioner's counsel was trying to preserve redirect for all issues. In addition to that, under the statutory scheme, it U.S.C. Counsel, just hold on. Because you keep talking about preserving as though there's some special step a lawyer has to take in order to obtain redirect. I would just assume that that was a normal course of the proceeding. Well, Your Honor, respectfully, under the statutes, there is no right to petitioner's counsel having redirect. And if you were to go to, as I was going to say, to 8 U.S.C. Section 1229, little A, little B, 4, big B, the only rights that an alien is entitled to, and as I quote, to have a reasonable opportunity to examine the evidence against the alien, to present evidence on the alien's behalf, and to cross-examine witnesses presented by the government. Under the statutory scheme, petitioner was given these opportunities. There is nothing in the regulations of the statutes that entitles or give a right to the alien in order to conduct redirect examination. So you don't think when a judge says that before I issue my opinion, you're going to be able to put more evidence on whether it's narrow or whether it's wider, whether it's redirect on one area or whether it's redirect in general. I mean, you don't dispute that that representation was made. I don't dispute that, but you have to take that statement. All right. But then the opinion comes out before. You don't see a problem with that? No. Because redirect, if you go back and look at that statement within the context of the entire merits hearing, it was clear that it was going to be limited to but a single issue. And petitioner's counsel wanted to preserve redirect for that single issue. She said no other issues were going to be preserved but that one. And again, on their appeal brief, it didn't work. But they still didn't get that. The opinion came out before they even, even if it's limited, they still didn't get that opportunity. What if the shoe were on the other foot and the judge said, well, you know, counsel, we're going to give you an opportunity to present evidence on this particular point, and then the opinion comes out and you lose? Well, Your Honor. You're not going to cry foul? If it were given the facts of this case, we would not. No, no, no, no. If it happened to you. But you have to look at the record, Your Honor, in this case, because if you look at it, the issue that was preserved for redirect was not decided by the immigration judge in this case. So therefore, there was no, there was no prejudice to the petitioner in this case because the issue that was preserved for redirect wasn't ultimately decided by the immigration judge. Instead, she limited her decision to the adverse credibility determination. And therefore, there was no prejudice to the petitioner in this case regarding that particular issue. But one of the aspects of the adverse credibility is the Indian Army situation. That's what, why he, you know, integral to that is he alleged that he fears persecution by the Indian Army. And the Court found that they didn't think that that made sense, right? Correct, Your Honor, because that was the first time in his testimony that he raised that particular factual situation. But the redirect that supposedly was going to be put on, wouldn't that factor into that issue? No, Your Honor, because the incident that petitioner is claiming that he's afraid to go back to Indian for is that he was detained in an Indian prison for two and a half months because he asked to go. You know, I have to admit that your adamance on, that, you know, I don't know how I'm going to ultimately decide this, but I was more concerned about that they hadn't put anything on on prejudice. But your adamance that a judge can tell people you're going to have time to come back and then issues an opinion without it, whether it's you or whether it's someone else, I find it troubling that it doesn't trouble you at all. No, it's not that it's not troubling, Your Honor, but I'm saying within the context of this case. I mean, it sort of detracts a little bit for me from what, you know, what you're saying here. But, Your Honor, respectfully, go back to the court. I mean, we don't want judges to do this. No, I'm saying, Your Honor, but within the context of this case, there was no prejudice, there was no error. All right. Well, and that's where we were. But you keep going back to that it's okay for the judge to do this. But so why was there no prejudice? Well, Your Honor, respectfully, that's the Petitioner's burden to show that there are prejudices and they have to provide significant testimony. And what should the Petitioner have shown? Where did the Petitioner, should it have been in front of the BIA? Should it be some affidavit? What are you saying that they could have done? They could have presented that significant testimony before the BIA. That's where they should have presented it, and they failed to do that. And this isn't a case where the Petitioner has been pro se all along, but rather had been represented by confident and able counsel. Because if you go back and look at the record, there wasn't but one appeal brief filed, but there was two. And those are very well detailed, very articulate, and raise a series of arguments for why the immigration judge's decision was an error. But ultimately, the Board of Immigration Appeals agreed with the immigration judge because substantial evidence supported the six reasons that the Board identified for finding the Petitioner testified incredibly. And that result, that consisted of inconsistencies, material omissions, and evasive and vague testimony. Because at one point during the hearing, if you go at page 164 to 165, Petitioner was unable to answer the simple question, whether or not the militants who kidnapped him tried to recruit him to their cause. He was asked four different times and could not give a responsive answer. And by the end of the hearing, he was found guilty. Let me just, I'm sorry to cut you off, but I'm looking at page 183 to 184 of the record that you cited. I just, I don't know if you have it in front of you, but I'm, maybe just help me see where, I see the judge saying to the Petitioner's counsel that you are, we're going to go to redirect, we're going to proceed to redirect. She was going to give him that opportunity, and he presumably would have been able to explain these various inconsistencies. But she says, but I understand that you may want some more time to address this one issue in particular. And he said, I need to consult with my client. Let me talk to him. He came back and said, yes, if you'll give us the opportunity to defer it, that's what we would prefer to do. I don't see any statement in here where counsel said we're only going to limit redirect to this one new issue. Well, if you go back and look within the context, I hate to keep saying the context. If you go back and look at the tail end of the merits hearing, and you see that the government raised the prosecutor's bar in regard to the Petitioner, this was an issue that she was unprepared for. And then they limited, and then she said at the end, yes, Your Honor, I would like to continue this. And this is where I say on the bottom of 183, it's the last sentence where it's, excuse me, it was a Mr., not a Mrs. before the immigration judge. But Mr. Sylvia said to the judge, yes, I did. And we would like to continue this case to a time that the court will give us so that we have a chance to rebuttal of the government. And the rebuttal of the government was the prosecution bar raised by the government at that time. And that's what redirect is going to be limited to. No, counsel, just look back on page 183. That's not at all what the judge is saying. The judge is saying, well, I'm ready to hear a redirect from you. Are you ready to proceed? And counsel says, let me consult with my client. No, Your Honor, I'm not. I need more time to address this one issue. I don't see any statement in here where counsel said, and when we come back, I'm only going to do redirect on this one limited issue. Well, Your Honor, I think if you go back and look at the preceding pages leading up to this point, that redirect that Petitioner's counsel wanted was specifically to that one issue. And as I said before, this issue of whether or not redirect on all issues denied to Petitioner is a new issue that was never raised before the Board of Immigration Appeals. So the Board of Immigration Appeals should have had a chance to address that concern if it was a concern of Petitioner's and not before this Court. All right. Does the panel – you're over time, and the panel doesn't have any additional questions. Thank you. Thank you, Your Honor. I guess I'm just – I'm going to put little cards on the table here, and I'm only speaking for myself. But I'm equally concerned that the government sees no issue, or sees a very limited issue, and that you weren't allowed to redirect on that side. But I'm equally concerned that you're asking us to speculate, and I'm asking you So go ahead. I understand, Your Honor. I think one way to resolve – But you're both really adamant. You say it at the top of your voices. I give both of you that. But – I think – I think that one way to resolve that issue is to just move on to the second issue. Assuming for one second that – I mean, we can all agree that it was a little unsavory how it happened. We don't want to encourage immigration judges to set a new hearing and then not let people come back. But assuming that there wasn't any prejudice with regard to – assuming you buy government's argument that it was only limited to this one issue, I think you still then have to evaluate whether the credibility finding is supported by substantial evidence. And that's what it comes to next. And – What if the Court thinks there's a substantial problem about due process, but no problem at all about the credibility finding? Well, I think if the Court determines that his due process rights were violated, and that may have affected the outcome of the case, there has to be a remand. Well, but that's the prejudice issue. Right. But the way – If we – if you haven't shown prejudice, but we think that there's a due process violation, but the adverse credibility is supported by substantial evidence, then you lose. Right. But the adverse credibility – You still have to – you've got to show prejudice to get back into that. Your Honor, but it – But in the answer, Judge Singleton, do you want to restate your question? No. That – my question was, what if the Court thinks there's a substantial problem, not a red-packed cinch that you win, but a substantial problem with regard to the due process issue? Because Mr. Singh did not ask for a continuance. The ALJ did not say, well, what do you want to show at the continuance? And he mumbles, and she says, well, I don't think there's a legitimate basis for a continuance. She says, go ahead. I'll give you a continuance, and if you want to put on evidence, do this. If you want to call witnesses, let the government know. And then out of the blue comes down with a decision prior to the time she scheduled for a thing. Now, that's a problem for us. It may not be a problem for anybody else. But it's altogether possible that if you get over that and assume he couldn't show anything different, there's nothing else wrong with the case. Well, Your Honor, the standard is really low in terms of potential prejudice. He only has to show that it may have affected the outcome of his case. And I think that the reason that that standard is low when you read the cases about due process and potential prejudice is because of situations like this where it may be difficult on a closed administrative record to show what that potential prejudice was. And so I think in this case, where the adverse credibility finding can't stand alone anyway because he wasn't given an opportunity to explain the alleged inconsistencies, and where there's a lot of things that were ---- That's the prejudice, you say. Well, I think that's one area of prejudice. I mean, another aspect, I mean, another kind of indication from the record that the redirect exam wasn't going to be limited to that persecutor issue and that it was going to be more about credibility is that the immigration judge kind of asked ---- she noted that the asylum officer's notes from the asylum interview weren't in the record and asked Respondent's Counsel if he intended to call the asylum  Let me ask you this. If we say that there was due process and we see a potential for prejudice, so what do you get? You get a remand for redirect? Is that it? I think it's a remand on an open record to at least have redirect and explain inconsistencies. Well, okay. But remand on an open record, you're applying, you know, I don't ---- you don't get more than redirect, do you? No. But the redirect that the government contemplated, I mean, that the immigration judge contemplated and laid out for Respondent or, I'm sorry, for Petitioner was including a witness list, potential documentary evidence, and his own testimony. I mean, she gave him deadlines for those things, and she offered the government an opportunity to call the asylum officer, who presumably would have been talking about credibility, to the extent that the record indicates he may have said some things differently. Is OSSIJ still around? Yes, she is, Your Honor. I'm sure she'd be thrilled to have the case back. Do any of the Court have additional questions? We don't have any additional questions. Thank you, Your Honor. We've taken you both over your time. Thank you for your argument. This matter will stand submitted.
judges: Singleton, Callahan, Watford